IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ESPOSITO SECURITIES, LLC, | § § § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:12-cv-04926-N |
| | § | |
| ADVISORSHARES INVESTMENTS, LLC, | § § | |
| Defendant. | § § | |

## ESPOSITO SECURITIES LLC'S AMENDED PETITION

Esposito Securities LLC ("Esposito") files this Amended Petition complaining of AdvisorShares Investments, LLC ("AdvisorShares" or "Defendant"), and shows the Court as follows:

### I.
### DISCOVERY CONTROL PLAN, PARTIES, JURISDICTION & VENUE

1.  Discovery is intended to be conducted under Level 2 of Texas Rule of Civil Procedure 190.

2.  Plaintiff, Esposito Securities, LLC, is Texas limited liability company with its principal place of business within Texas at 300 Crescent Court, Suite 650, Dallas, Texas.

3.  Defendant AdvisorShares Investments, LLC is a Delaware limited liability company doing business in Texas with its principal place of business at 2 Bethesda Metro Center, Suite 1330, Bethesda, Maryland. AdvisorShares also maintains an office within Texas at 4144 North Central Expressway, Suite 600, Dallas, Texas 75204. Defendant has been served with process and answered in the above styled lawsuit.

4.  AdvisorShares removed this matter from the 95th Judicial District for the State of Texas and does not dispute venue or jurisdiction.

## II.
## FACTUAL BACKGROUND

5. Beginning in 2010, Esposito, a broker-dealer registered with the Financial Industry Regulatory Authority ("FINRA"), began a business relationship with AdvisorShares, which is in the business of developing and distributing actively managed exchange traded funds ("ETF").

6. On November 1, 2010, Esposito and Defendant entered into a Mutual Nondisclosure Agreement ("NDA").[1] Ex. A. Esposito and Defendant entered into the NDA to explore working together without the risk of making public any confidential information regarding the respective companies. *Id.* In particular, Esposito and Defendant explored the possibility of Esposito buying an interest in AdvisorShares. The nature of these discussions required the parties to exchange both proprietary and strategic information regarding Esposito's operations and relationships in the industry.

7. Pursuant to the NDA and in further efforts to develop the business relationship between Esposito and Defendants, Esposito shared information which was designated as "Confidential Information" under the NDA with Defendant. This information was not available to the public and included information regarding assets, acquisitions, and business operations of Esposito. *Id.*

8. The NDA according to its own terms, will remain in effect for five years from the date of the last disclosure of confidential information. *See* Ex. A-1 at § 9. As such, the NDA is still in effect today. *Id.*

9. Negotiations between Esposito and Defendant broke down in mid-2012. As a result of this breakdown in negotiations, Esposito sought alternate means to expand its

---

[1] A true and correct copy of the NDA is attached and incorporated by reference as Exhibit "A-1."

business through vertical integration. Therefore, Esposito entered into a strategic partnership with GENCAP Ventures, LLC ("GENCAP"), which partnered with Factor Shares, a line of exchange traded funds.

10. Esposito disclosed its strategic partnership with GENCAP to AdvisorShares. However, Esposito did not disclose its proprietary strategy for how it intended to use its relationship with GENCAP, and in particular, Esposito's interest in Factor Shares. In particular, Esposito never informed Defendant that its strategic partnership with GENCAP would render Esposito a competitor with AdvisorShares. Esposito never discussed with Defendant what it intended to do with Factor Shares.

11. Esposito employee Justin Burns ("Burns") knew of both Esposito's strategic partnership with GENCAP and Esposito's proprietary strategy regarding the use of GENCAP and Factor Shares. Burns had access to Esposito's plans to move into the ETF market via Factor Shares, the relationships Esposito had forged by way of its strategic partnership with GENCAP, and the financial investment and devotion of resources Esposito was willing to commit to GENCAP and Factor Shares. In short, Burns had access to all of Esposito's strategic plans with respect to Factor Shares. None of this proprietary information had been shared with the public or with AdvisorShares.

12. Burns was subject to a confidentiality agreement and non-competition agreement as part of his employment with Esposito. Burns signed this agreement on June 13, 2008 and the non-disclosure elements of this agreement were updated on September 9, 2008. Such confidentiality and non-competition agreements are standard in the securities industry, where client relationships, private financial information, and proprietary strategies are guarded closely to avoid disclosure to competitors.

13. Burns' employment with Esposito ended on July 24, 2012, when Burns

resigned.

14. Following the end of his employment with Esposito and while Burns was still subject to the non-competition and confidentiality provisions of his agreement with Esposito, Defendant began working with Burns in some capacity. While the nature of their relationship is not completely clear yet, Defendant solicited and gathered from Burns additional, non-public information concerning Esposito's partnership with GENCAP and its strategy concerning use of Factor Shares. Defendant knew or should have known that Burns had resigned from Esposito and that Burns' knowledge of Esposito's operations and strategy concerning GENCAP and Factor Shares was subject to a confidentiality agreement binding Burns' non-disclosure. Nevertheless, Defendant gathered information from Burns regarding Esposito's intentions and strategy that it could not have gathered from any other source.

15. Beginning in mid-August of 2012, Defendant, by and through at least one of its officers, Dan S. Ahrens ("Ahrens"), began, without the prior approval or knowledge of Esposito, contacting numerous Esposito clients and informing them of the information it had gathered from Burns concerning Esposito's intentions and strategy concerning Factor Shares. Each of these clients were sub-advisors for Defendant's ETF; therefore, Defendant held a position of persuasive power over these clients given its management of the ETF. Ahrens instructed each of these clients to cease trading with Esposito.

16. Ahrens contacted Esposito client YourSource Financial through its Chief Investment Officer, Roger Nusbaum, in August 2012. During the conversation, Ahrens informed Nusbaum that Esposito had developed a competitive position in the ETF market and was not longer merely a broker. This information must have come from Burns and no other source, as Esposito had not shared with Defendant that it intended to work with

Factor Shares to compete with AdvisorShares. Ahrens instructed Nusbaum not to trade with Esposito any longer. YourSource Financial subsequently placed its AdvisorShare ETF trades with Knight Securities, a broker that was subject to an SEC investigation at the time. As a direct result of Ahrens' disclosure of Esposito's proprietary strategy concerning its use of Factor Shares, YourSource Financial ceased trading with Esposito.

17. During the same time period, Ahrens also contacted Laif Meidell, President of American Wealth Management, another Esposito client. Ahrens informed Meidell that Esposito "was now a competitor" and he should cease trading with Esposito. Meidell placed two more trades with Esposito and was contacted a second time by Ahrens. During this second call, Ahrens told Meidell to stop using Esposito because "there is no sense helping the competition." As a result of Ahrens' characterization of Esposito as a competitor, which Defendant could have known only due to its inappropriate solicitation of proprietary information from Burns, Meidell ceased trading with Esposito.

18. During these calls Ahrens abused AdvisorShares' position of power to cut off all trading with Esposito. AdvisorShares intervened in each sub-advisor's discretionary choice of broker and in doing so, interfered with the sub-advisors' relationships with Esposito. Most importantly, AdvisorShares disclosed information that it either learned pursuant to its NDA with Esposito or disclosed information nefariously gathered by inducing Burns to violate his confidentiality agreement.

19. AdvisorShares has interfered with Esposito's client relationships and directed Esposito's clients to a market maker, seeding partner, Knight Securities, in violation of FINRA Rule 5250. Rule 5250 prohibits AdvisorShares from direct order flowing for sales, seeding, or market making for funds. Due to the financial incentive implicit in Defendant's directing fund business to Knight Securities, Defendant is placing its own financial interests

in front of its fiduciary responsibility to find the most qualified broker option for the fund.

## IV.
## CAUSES OF ACTION

### Count 1 – Tortious Interference with Existing Contract – Burns Confidentiality Agreement with Esposito

20. Esposito reasserts and by this reference incorporates the allegations in paragraphs 1 through 19 above.

21. As set forth in the preceding paragraphs, Justin Burns and Esposito were parties to a confidentiality agreement in which Burns agreed not to disclose proprietary information and strategies of Esposito. In return for signing the agreement, Burns was allowed access to and was directly provided confidential, proprietary, and non-public information concerning, among other things, Esposito's strategy concerning its strategic partnership with GENCAP and relationship with Factor Shares. In particular, Burns knew of Esposito's intentions to regarding Factor Shares, the steps Esposito would take to enter the ETF market by way of Factor Shares, and exactly what resources Esposito would use to achieve its strategy.

22. Upon his resignation, Burns and AdvisorShares began working together in some capacity. Though the precise nature of the relationship is not known yet, it is clear that AdvisorShares induced Burns to violate his confidentiality agreement with Esposito by soliciting proprietary, non-public information concerning Esposito's relationship with and strategy for Factor Shares. Burns was not authorized by Esposito to share this confidential information.

23. AdvisorShares knew or should have known that Burns was bound by a confidentiality agreement. Such agreements are standard practice in the securities industry.

24. AdvisorShares induced Burns to breach his confidentiality agreement, whether by financial incentive or the promise of an ongoing broker relationship.

25. Less than one month after Burns resigned from Esposito, AdvisorShares used the information it gathered from Burns to contact Esposito's clients, including YourSource Financial and American Wealth Management, and strong-armed them into not utilizing Esposito as a broker. Thus, as a proximate result of Defendant's inducement of Burns to violate his confidentiality agreement, AdvisorShare's actions have caused Esposito to lose numerous clients and ETF trade transactions, and all commissions derived therefrom.

### Count 2 – Tortious Interference with Prospective Contractual Relations

26. Esposito reasserts and by this reference incorporates the allegations in paragraphs 1 through 25 above.

27. Before Defendant's wrongful conduct, there was reasonable probability that Esposito would have entered into a business relationship with AdvisorShares ETF sub-advisors, including, YourSource Financial and American Wealth Management, among other Esposito clients.

28. AdvisorShares has shared information protected under the NDA with Esposito's clients. AdvisorShares also shared information it gathered by way of its inducement of Burns to breach his confidentiality agreement with Esposito. This information included the specific strategy and resources Esposito devoted to its acquisition of GENCAP and its partner, Factor Shares. Burns must have shared information that Esposito had not disclosed to AdvisorShares or the public concerning Esposito's entrance into the ETF market by way of Factor Shares. Defendant used the information it gathered from Burns to convince several sub-advisors, including YourSource Financial and

American Wealth Management, that Esposito had become a competitor. Accordingly, AdvisorShares instructed its sub-advisors to no longer use Esposito as a broker.

29. AdvisorShares has taken the extra step to interfere with Esposito's client relationships and direct Esposito's clients to a market maker, seeding partner, Knight Securities, in violation of FINRA Rule 5250. By way of example, YourSource Financial immediately ceased using Esposito as its broker and began using Knight Securities immediately after AdvisorShares instructed Nusbaum to stop trading with Esposito.

30. The independently tortious conduct of AdvisorShares interfered with Esposito's relationships with its clients, including YourSource Financial and American Wealth Management, and proximately caused Esposito to suffer actual damage or loss in the form of lost commissions on trades it reasonably would have completed for its clients. Due to this interference, Esposito stands to lose both future trading opportunities and the relationships with these clients.

### Count 3 – Breach of Contract

31. Esposito reasserts and by this reference incorporates the allegations in paragraphs 1 through 30 above.

32. Esposito and AdvisorShares entered into a valid and enforceable NDA.

33. Esposito performed under the terms of the NDA and remains ready and willing to continue to do so.

34. AdvisorShares breached the NDA by disclosing Confidential Information subject thereto to clients of Esposito. This Confidential Information includes information concerning Esposito's operations and management. This Confidential Information does not include the proprietary strategic information gathered from Justin Burns, as such information, while non-public, was not shared by Esposito.

As a result of this breach of the NDA, Esposito has suffered damages in the form of lost client relationships and lost income from trade commissions it reasonably would have received it Esposito continued to serve as the broker for the sub-advisors.

## V.
## ATTORNEY'S FEES

35.     As a result of Defendant's actions, including its breach of contract, Esposito has had to employ Crouch & Ramey LLP to represent it in this lawsuit.  Esposito has agreed to pay Crouch & Ramey LLP a reasonable attorney's fee.  Esposito seeks recovery of its attorney's fees from Defendant pursuant to Texas Civil Practice & Remedies Code Section 38.001, *et seq.*

## PRAYER

WHEREFORE, ESPOSITO SECURITIES, LLC prays AdvisorShares Investments, LLC be cited to appear and answer herein and that, upon final hearing, Esposito Securities, LLC be awarded judgment against Defendant for all damages referenced above, reasonable attorney's fees, court costs, and pre-judgment and post-judgment interest at the maximum rates allowable by law, and any other or further relief to which Plaintiff is legally or equitably entitled.

Dated: February 22, 2013

Respectfully submitted,

By: /s/ Court D. Smith
**Court D. Smith**
State Bar No. 24008049
**Justin P. England**
State Bar No. 24063955

**CROUCH & RAMEY, L.L.P.**
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 922-7100
Telecopier: (214) 922-7101

**ATTORNEYS FOR PLAINTIFF
ESPOSITO SECURITIES, LLC**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been forwarded via certified mail return receipt requested on this 22nd day of February, 2013, to the following:

Anne Marie Painter
Micala R. Bernardo
MORGAN LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, Texas 75201
Tel: 214.466.4000
Fax: 214.466.4001
Email: apainter@morganlewis.com
        mbernardo@morganlewis.com

/s/ Court D. Smith
Court D. Smith