**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ESPOSITO SECURITIES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:12-cv-04926-N** |
| | § | |
| **ADVISORSHARES INVESTMENTS, LLC,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
DEFENDANT ADVISORSHARES INVESTMENTS, LLC TO DISMISS
THE AMENDED PETITION OF PLAINTIFF ESPOSITO SECURITIES, LLC**

MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, Texas 75201
Telephone:  (214) 466-4000

Attorneys for Defendant AdvisorShares Investments, LLC

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................... ii

PRELIMINARY STATEMENT ............................................................. 1

PROCEDURAL HISTORY.................................................................... 4

FACTUAL BACKGROUND AND ALLEGATIONS ................................. 4

    The Original Complaint ................................................................ 5

    The Amended Complaint .............................................................. 6

    The Allegedly Confidential Fact That Esposito Was Entering The ETF Business Was Already Public ................................................................. 7

ARGUMENT ...................................................................................... 9

I.    ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THEY FAIL TO SATISFY *TWOMBLY*, *IQBAL*, AND FRCP 8(A)(2) ................................... 10

    A.    All Of Plaintiff's Claims Are Implausible ........................... 11

    B.    Plaintiff's Naked Assertions And Legal Conclusions Fail To Satisfy Its Burden To Allege Actual Facts........................... 13

II.    PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE A CLAIM FOR TORTIOUS  INTERFERENCE WITH EXISTING CONTRACT (COUNT 1) ............ 14

III.    PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS (COUNT 2) ................................................................. 18

IV.    PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE A CLAIM FOR BREACH OF CONTRACT (COUNT 3) ....................................... 21

V.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.................. 25

CONCLUSION.................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

American Realty Trust, Inc. v. Travelers Cas. and Surety Co. of America,
  362 F. Supp. 2d 744 (N.D. Tex. 2005) ...................................................................................23

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)........................................................................................................... passim

Atain Specialty Ins. Co. v. Chang,
  No. H-12-160, 2012 WL 2194116 (S.D. Tex. June 14, 2012)...................................................2

Aurora Nat. Gas, L.L.C. v. Continental Nat. Gas, Inc.,
  No. 3:98–CV–1348–BC, 1999 WL 304561 (N.D. Tex. May 10, 1999) .................................20

Axcess Broadcast Servs., Inc. v. Donnini Films,
  No. 3:04-CV-2639-L, 2006 WL 2679982 (N.D. Tex. Sept. 18, 2006)...................................16

Ayco Co., L.P. v. Feldman,
  No. 1:10-CV-1213, 2010 WL 4286154 (N.D.N.Y. Oct. 22, 2010) ........................................19

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007)........................................................................................................... passim

Broussard v. PNC Bank,
  No. H-11-1874, 2012 WL 2994653 (S.D. Tex. July 20, 2012) ..............................................24

Ceramic Performance Worldwide, LLC, v. Motor Works, LLC,
  No. 3-09-CV-0344-BD, 2010 WL 234804 (N.D. Tex. Jan. 21, 2010) ..............................19, 20

Fulmer v. Klein,
  No. 3:09-CV-2354-N, 2011 WL 1108661 (N.D. Tex. Mar. 16, 2011)...............................9, 10

Funk v. Stryker Corp.,
  631 F.3d 777 (5th Cir. 2011) ..................................................................................................10

Green v. Niles,
  No. 11 Civ. 1349, 2012 WL 987473 (S.D.N.Y. March 23, 2012)..........................................12

In re Lerner,
  No. 10-52128, 2011 WL 1832811 (Bkrtcy. D. Conn. May 12, 2011)....................................12

Internet Corporativo S.A. de C.V. v. Business Software Alliance, Inc.,
  No. Civ.A. H–04–2322, 2004 WL 3331843 (S.D. Tex. Nov. 15, 2004) ................................10

Johnson v. Wells Fargo Bank, N.A.,
  No. 11-cv-1254, 2012 WL 6015551 (D. Minn. Dec. 3, 2012) .................................12

Jones v. Greninger,
  188 F.3d 322 (5th Cir. 1999) ....................................................................................25

Lewis v. Bank of Am. NA,
  343 F.3d 540 (5th Cir. 2003) ....................................................................................22

Mill Creek Press, Inc. v. The Thomas Kinkade Co.,
  No. CIVA.3:04-CV-1213-G, 2004 WL 2607987 (N.D. Tex. Nov. 16, 2004).........16

Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C.,
  No. 10-cv-261, 2011 WL 1655575 (E.D.N.Y. May 2, 2011)...................................12

Pension Advisory Grp., Ltd. v. Country Life Ins. Co.,
  771 F. Supp. 2d 680 (S.D. Tex. 2011) ......................................................................22

Porter v. Shearson Lehman Bros. Inc.,
  802 F.Supp. 41 (S.D. Tex. 1992) ..............................................................................19

Puente v. Citimortgage, Inc.,
  No. 3:11-CV-2509-N, 2012 WL 4335997 (N.D. Tex. Aug. 29, 2012) ..............9, 10

Richman v. Goldman Sachs Grp., Inc.,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012).......................................................................19

Roehrs v. Conesys, Inc.,
  332 Fed. App'x. 184 (5th Cir. 2009) .........................................................................21

Roubinek v. Select Portfolio Serv. Inc.,
  No. 3:11–CV–3481–D, 2012 WL 2358560 (N.D. Tex. June 21, 2012)...................22

RSR Corp. v. Int'l Ins. Co.,
  No. 3:00–CV–0250–P, 2009 WL 927527 (N.D. Tex. March 23, 2009) ..................19

Staton Holdings, Inc. v. Russell Athletic, Inc.,
  No. 3:09-CV-0419-D, 2009 WL 4016117 (N.D. Tex. Nov. 20, 2009) .......... passim

Taubenfeld v. Hotels.com,
  385 F. Supp. 2d 587 (N.D. Tex. 2004) ......................................................................25

ThermoTek, Inc. v. WMI Enters., LLC,
  No. 3:10-CV-2618-D, 2011 WL 1485421 (N.D. Tex. Apr. 19, 2011) .......... passim

Trammell Crow Resid. Co. v. American Protection Ins., Co.,
  No. 3:10–CV–2163–B, 2012 WL 4364616 (N.D. Tex. Sept. 25, 2012) ..................20

Video Ocean Group LLC v. Balaji Mgmt. Inc.,
    No. Civ.A. H-03-1311, 2006 WL 964565 (S.D. Tex. April 12, 2006)....................................16

## STATE CASES

Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.,
    No. 03-09-00566-CV, 2011 WL 2769838 (Tex. App. July 12, 2011) ...................................19

## STATUTES

15 U.S.C. § 78q.............................................................................................................................24

Fed. R. Civ. P. 8(a) ............................................................................................... passim

Fed. R. Civ. P. 12(b)(6)........................................................................................... passim

Defendant AdvisorShares Investments, LLC ("ASI") hereby moves, pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (the "FRCP"), to dismiss in its entirety, <u>and</u> with prejudice, "Esposito Securities LLC's Amended Petition," dated February 22, 2013 (the "Amended Complaint" or "Am. Comp."), filed by Plaintiff Esposito Securities, LLC ("Plaintiff" or "Esposito").[1]

## PRELIMINARY STATEMENT

The original complaint of Esposito, a securities broker-dealer (the "Original Complaint"),[2] was replete with formulaic recitations of the elements of the causes of action, naked assertions lacking any further factual enhancement, legal conclusions, and implausible theories. Accordingly, ASI (which develops and distributes actively managed exchange-traded funds ("ETFs")) moved to dismiss the Original Complaint. Esposito decided <u>not</u> to oppose that motion, unilaterally deemed it "moot," and instead filed the Amended Complaint. The Amended Complaint contains completely different legal theories than the Original Complaint. By filing the Amended Complaint, instead of opposing ASI's initial motion to dismiss, Esposito <u>conceded</u> that the Original Complaint: (i) failed to meet the pleading standards of FRCP 8(a)(2) and FRCP 12(b)(6), as interpreted in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); and (ii) failed to adequately allege the requisite elements of Plaintiff's claims under Texas law. The allegations of the Amended Complaint, however, are even more deficient and implausible than those in the Original Complaint. Moreover, the complete change in Plaintiff's theories demonstrates that it is desperately attempting to conjure up a viable claim against ASI where none exists.

The theories in the Original Complaint were that ASI harmed Esposito and its

---

[1]   <u>See</u> Appendix ("APP"), at APP 70-97; <u>see</u> <u>also</u> Dkt. No. 17.

[2]   <u>See</u> Dkt. No. 2-4.

relationships with its current and prospective clients by:  (i) allegedly sharing information with the clients that was allegedly protected from disclosure by a non-disclosure agreement between ASI and Esposito; and (ii) claiming that Esposito had stolen intellectual property from ASI.

Esposito has now completely shifted its focus to a former employee of Esposito, Justin Burns ("Burns"), and information Burns allegedly had about a company controlled by Esposito, GENCAP Ventures, LLC ("GENCAP"), which acquired another entity now controlled by Esposito called FactorShares.  Like ASI, FactorShares is in the ETF business.  In light of Esposito's prior allegations, the claims asserted against ASI in the Amended Complaint make no sense.  Comparing the allegations and theories contained in the Original Complaint (which does not even mention Burns, GENCAP or FactorShares) with those contained in the Amended Complaint confirms the deficiencies and implausibility of Esposito's new claims.[3]

For example, Plaintiff's Original Complaint alleged that ASI tortiously interfered with Plaintiff's contracts with current and prospective clients of Plaintiff by disclosing Plaintiff's unidentified "Confidential Information" to such clients.  In the Amended Complaint, Plaintiff now alleges that ASI tortiously interfered with Plaintiff's confidentiality agreement with Burns, by inducing Burns to divulge to ASI the allegedly confidential fact that Esposito was entering the ETF business.  Moreover, because Esposito's foray into the ETF business was already public by the time Burns allegedly disclosed that fact to ASI, this new theory is implausible.

The Original Complaint also asserted a business disparagement claim against ASI, alleging that ASI made false statements to Plaintiff's clients that Plaintiff had stolen intellectual property from ASI.  Apparently, after realizing that such allegations were baseless, this claim was abandoned entirely in the Amended Complaint.

---

[3]    See APP 70-97 (a true and correct copy of a comparison of the Original Complaint to the Amended Complaint).

Given the radical changes in Plaintiff's allegations and legal theories, and its focus on Burns' alleged disclosure of Esposito's "confidential" information, the Amended Complaint appears to be nothing more than Esposito's improper attempt to gain ammunition for a potential claim against Burns.

In any event, the Amended Complaint should be dismissed because, under <u>Twombly</u> and <u>Iqbal</u>, Esposito's claims are implausible and the Amended Complaint lacks the requisite factual detail to support each of Plaintiff's claims.  Plaintiff also fails to adequately allege the required elements of each of its three claims.

With respect to Plaintiff's claim for tortious interference with existing contract relating to Burns' confidentiality agreement with Esposito (Count 1), Plaintiff fails to adequately allege any facts (as it must) as to how and why ASI purportedly induced Burns to breach his confidentiality agreement with Esposito, how and why ASI willfully and intentionally interfered with that contract, how Burns' breach of that contract could proximately cause Esposito to suffer any damages, or how Plaintiff suffered any damages given that Plaintiff fails to identify any exclusive trading relationship between Plaintiff and its alleged current clients.

With respect to Plaintiff's claim for tortious interference with prospective contractual relations relating to Plaintiff's supposed relationships with prospective clients (Count 2), Plaintiff fails to adequately allege any facts (as it must) as to who Plaintiff's prospective clients are or were and the nature of those prospective relationships, how ASI allegedly interfered with Plaintiff's prospective relationships with such clients, how ASI's alleged conduct was independently tortious or unlawful, how ASI acted with malice, how ASI's alleged interference proximately caused Plaintiff to suffer any damages, or how Plaintiff suffered any damages given that Plaintiff fails to identify a single prospective client that was "lost."

With respect to Plaintiff's claim for breach of a non-disclosure agreement between

3

Plaintiff and ASI (Count 3), Plaintiff fails to adequately allege any facts (as it must) as to what alleged confidential information ASI allegedly disclosed to Plaintiff's clients, which clients it was disclosed to, how that information was confidential, or how the disclosure of such information to Plaintiff's own clients caused Plaintiff to lose those clients.

Plaintiff's changing allegations and theories demonstrate that it is grasping at straws. Because Plaintiff has now had two attempts to state claims against ASI, the Amended Complaint should be dismissed in its entirety with prejudice.

## PROCEDURAL HISTORY

On or about October 23, 2012, Plaintiff filed the Original Complaint in Texas state court, and together therewith made an application for a temporary restraining order.  (Dkt. Nos. 2-3 & 2-4).  During a hearing on October 23, 2012, the state court denied Plaintiff's application.  ASI then removed this case to this Court.  (Dkt. No. 1).  On December 28, 2012, ASI filed a motion to dismiss the Original Complaint pursuant to FRCP 8(a)(2) and 12(b)(6).  (Dkt. Nos. 7 through 9).  On February 22, 2013, rather than opposing that motion, Plaintiff filed the Amended Complaint and asserted that ASI's motion to dismiss was "moot."  (Dkt. Nos. 17 & 18).

## FACTUAL BACKGROUND AND ALLEGATIONS

Esposito is a Texas broker-dealer registered with the SEC and FINRA.  Am. Comp., ¶ 2 & 5.[4]  ASI develops and distributes actively-managed ETFs.  Am Comp., ¶ 5.  In 2010, Esposito began a business relationship with ASI.  Am. Comp., ¶ 5.  On or about November 1, 2010, Esposito and ASI entered into a "Mutual Nondisclosure Agreement" (the "NDA").  Am. Comp., ¶ 6, & Exh. A.  Esposito alleges that it entered into the NDA with ASI in order to explore working together and the possibility of Esposito buying an interest in ASI.  Am. Comp., ¶ 6.

---

[4]      Certain of the allegations of the Amended Complaint are taken as true solely for purposes of this motion.

Esposito allegedly shared with ASI information that was designated as "Confidential Information" under the NDA.[5]  The Amended Complaint describes the "Confidential Information" merely as information that "was not available to the public and <u>included</u> information regarding assets, acquisitions, and business operations of Esposito."  Am. Comp., ¶ 7 (emphasis added).  The Amended Complaint alleges that negotiations between Esposito and ASI "broke down" in "mid-2012."  <u>Id.</u>, ¶ 9.[6]

**<u>The Original Complaint</u>**

In contrast to the Amended Complaint, the Original Complaint did not even mention Burns, GENCAP, or FactorShares.  The Original Complaint asserted four claims against ASI.  The claims for tortious interference with existing contracts (Count 1) and tortious interference with prospective contractual relations (Count 2) each asserted that, beginning in mid-August of 2012, ASI tortiously interfered with Plaintiff's relationships with its clients by:  (1) sharing information with Esposito's clients that was "confidential" under the NDA; and (2) telling Esposito's clients that Esposito had stolen ASI's intellectual property.  The breach of contract

---

[5]        Although ASI does not concede that any such information was actually "Confidential Information" as defined in the NDA, for ease of reference on this motion only, ASI uses the phrase "Confidential Information."

[6]        Esposito's collective allegations (in the Original and Amended Complaints) demonstrate the irony of Esposito's current allegations and theories.  The following is a fair reading of Esposito's own allegations.  ASI and Esposito shared confidential information about the possibility of partnering so that Esposito could enter the ETF business, which was ASI's focus and expertise.  The negotiations between the companies "broke down" in "mid-2012."  Low and behold, Esposito then enters the ETF business no later than June 1, 2012 through GENCAP.  Esposito later accuses ASI of telling Esposito's clients that Esposito had stolen ASI's intellectual property.  GENCAP's business model is described (by Esposito and others) as remarkably similar to ASI's.  <u>See</u> O. Ludwig, "New ETF Firm GENCAP Buys FactorShares," IndexUniverse (July 16, 2012), APP 4-6; "GENCAP Ventures, LLC Purchases Factor Advisors, LLC," PR Newswire Dallas (July 17, 2012), APP 7; T. Lydon, "Gencap Acquires FactorShares ETFs," ETF Trends (July 18, 2012) APP 8-9; "GENCAP Ventures, LLC Announces Important Strategic Partnership With Esposito Global, LLC," PR Newswire Dallas (July 18, 2012), APP 10-11; R. Goldsborough, "Curtain Rises for 2 More Preferred-Stock ETFs," MorningStar (July 23, 2012), APP 12-18; C. Murphy, "FactorShares Lists 3 Miner ETFs," IndexUniverse (Sept. 5, 2012), APP 19-20; C. Murphy, "FactorShares Lists 3 Miner ETFs" IndexUniverse (Nov. 29, 2012) APP 21-22; <u>see also</u> "GENCAP Ventures, LLC Announces Important Strategic Partnership with Esposito Global, LLC – July 2012," available on Esposito's website at http://www.espositoglobal.com/securities/news.php?cmd=showitem&theid=88 (last visited March 27, 2013), APP 23-24.  The natural implication of these allegations and facts is that Esposito improperly used <u>ASI's</u> <u>own</u> confidential information that ASI shared with Esposito under the NDA in order for Esposito to start its own ETF business, and that this lawsuit is an example of the old adage that the best defense is a good offense.

claim (Count 3) asserted that ASI breached the NDA by sharing information with Esposito's clients that was "confidential" under the NDA.  The business disparagement claim (Count 4) asserted that ASI had told Plaintiff's clients that Esposito had stolen intellectual property.

**The Amended Complaint**

The Amended Complaint focuses almost entirely on Burns, GENCAP and FactorShares. Specifically, Esposito alleges that, sometime after July 24, 2012, when Burns resigned from Esposito, ASI began working with Burns "in some capacity."  Am. Comp., ¶ 14.  Although Esposito fails to allege the nature of any alleged relationship between ASI and Burns, and although Burns actually works at J.P. Morgan Securities, LLC ("J.P. Morgan"),[7] Esposito alleges that ASI solicited and obtained from Burns the allegedly non-public fact that Esposito intended to enter the ETF business through GENCAP and FactorShares.  Am. Comp., ¶ 14.  As demonstrated below, however, this fact was already public knowledge by July 24, 2012. Esposito then alleges that, beginning in mid-August of 2012, ASI shared with Esposito's clients both that allegedly non-public fact (Am. Comp., ¶ 15) and the "Confidential Information" that ASI allegedly obtained from Esposito under the NDA.  Am. Comp., ¶ 28.  Esposito also alleges that ASI somehow "instructed" Esposito's own clients to cease trading with Esposito (Am. Comp., ¶ 15), and somehow "directed" those clients to another broker-dealer.  Am. Comp., ¶ 19. Specifically, Esposito alleges that ASI contacted Esposito's current clients YourSource Financial ("YourSource") and American Wealth Management ("American Wealth") and "instructed" them not to trade with Esposito.  Am. Comp., ¶¶ 16-17.

The Amended Complaint asserts three claims against ASI.  The tortious interference with

---

[7]         According to BrokerCheck, Burns is employed by J.P. Morgan.  See
http://brokercheck.finra.org/Search/SearchResults.aspx?SearchGroup=Individual&IndlText=JUSTIN+M+BURNS&
FirmText=&PageNumber=1 (last visited March 27, 2013), which is publicly available on FINRA's website; see also
APP 25.

existing contract claim (Count 1) asserts that, sometime after July 24, 2012 when Burns left Esposito, ASI tortiously interfered with Esposito's confidentiality agreement with Burns by soliciting Burns to divulge to ASI the allegedly confidential (yet, as demonstrated below, already public) fact that Esposito was entering the ETF business. According to Esposito, ASI then allegedly used this fact to harm Esposito in its contractual relationships with only two of Esposito's <u>current</u> clients YourSource and American Wealth.

The tortious interference with prospective contractual relations claim (Count 2) asserts that, sometime after July 24, 2012, ASI tortiously interfered with Plaintiff's prospective contracts with Plaintiff's <u>unnamed</u> prospective clients by sharing with Esposito's prospective clients both the allegedly confidential fact that Esposito was entering the ETF business and information that was "confidential" under the NDA.

The breach of contract claim (Count 3) asserts that ASI breached the NDA with Esposito by disclosing "Confidential Information" covered by the NDA to Esposito's clients. The Amended Complaint  does not identify exactly what "Confidential Information" was allegedly disclosed by ASI.

**The Allegedly Confidential Fact That Esposito Was Entering**
**<u>The ETF Business Was Already Public Knowledge By July 24, 2012</u>**

Esposito alleges that ASI induced Burns to breach his confidentiality agreement with Esposito and to divulge to ASI the allegedly confidential fact that Esposito was entering the ETF business through GENCAP and FactorShares. According to Esposito, ASI then allegedly used this allegedly confidential fact to harm Esposito in its relationships with clients. Although there are many flaws with Esposito's theory, perhaps the most glaring is the fact that, before Burns even left Esposito <u>on July 24, 2012</u>, it was <u>already</u> public knowledge that Esposito was entering the ETF business through GENCAP and FactorShares. Therefore, even accepting the Amended

Complaint's allegations about the conveyance of this fact from Burns to ASI as true (and they are not true), Burns did not convey anything confidential to ASI because it was already public, and thus could not have breached his confidentiality agreement with Esposito.  Moreover, it also follows that ASI could not have induced such a breach, nor could it have used anything confidential to harm Esposito's relationships with its clients.

All of the following information was already publicly available before Burns even left Esposito on July 24, 2012.  Plaintiff Esposito Securities is part of a family of investment and financial management companies that includes Esposito Global, LLC ("Esposito Global")[8] and Esposito Private Equity Group ("Esposito Private Equity").[9]  Mark Esposito is the President of each of Plaintiff Esposito Securities, Esposito Global, and Esposito Private Equity.[10]  In 2011 and 2012, Joel Colpitts was the CFO of Plaintiff Esposito Securities ("Colpitts").[11]

On February 23, 2012, GENCAP was formed with Colpitts (Plaintiff's CFO) as its manager.[12]  Sometime earlier than June 2012, GENCAP became wholly-owned and controlled

---

[8]     Esposito Global website, available at http://www.espositoglobal.com/; see also APP 26.

[9]     See www.espositoglobal.com/peg; see also APP 27.  Plaintiff Esposito Securities, Esposito Global, and Esposito Private Equity all have offices at 300 Crescent Court, Suite 650, Dallas, Texas 75201.  See www.espositoglobal.com; see also APP 26-33; Am. Comp., ¶ 2.

[10]    See Esposito Global website, available at http://www.espositoglobal.com; see also APP 26; FactorShares 2X: Gold Bull/S&P Bear Form 424B3, which was filed with the SEC on July 16, 2012 and is publicly available on the SEC's website at the following address:
http://www.nasdaq.com/markets/ipos/filing.ashx?filingid=8328117#E49087_424B3_HTM_A_156 (last visited Mar. 27, 2012) (the "FactorShares Form 424B3"); see also APP 34-39.  As explained below, on a motion to dismiss, the Court may consider SEC filings, news articles, and other publically available documents.

[11]    See Esposito Securities, LLC Form X-17A-5, which was filed with the SEC on March 1, 2012 and is publicly available on the SEC's website at the following address:
http://www.sec.gov/Archives/edgar/data/1394846/999999999712007717/9999999997-12-007717-index.htm (last visited Mar. 27, 2012); see also APP 40-63.

[12]    See GENCAP Ventures, LLC "Certificate of Formation," which was filed with the Texas Secretary of State on February 23, 2012 (hereinafter, "GENCAP Certificate"); APP 64-66; see also FactorShares Form 424B3, APP 34-39.  The address for Colpitts on GENCAP's Certificate of Formation is the same address as the Esposito family of companies.

by Esposito Private Equity.[13]  In June 2012, GENCAP acquired Factor Advisors, LLC and affiliated entities, which develop and distribute ETFs through FactorShares' funds.[14]  Mark Esposito (Plaintiff's President) became a principal of Factor Capital Management, LLC (which controls the funds, "Factor Capital")[15] and Colpitts (Plaintiff's CFO) became Chairman and a member of the Board of Managers of Factor Capital.[16]  No later than early June 2012, it was public knowledge that Esposito controlled GENCAP and FactorShares and that it would be entering the ETF business.

On or about July 16, 2012, Plaintiff Esposito Securities itself announced that it would be entering the ETF business through GENCAP and FactorShares.[17]

On July 24, 2012, after all of the foregoing information was already in the public domain, Burns left Esposito.  Am. Comp., ¶ 13.  It is after Burns left Esposito that he allegedly shared the allegedly confidential fact with ASI that Esposito intended to enter the ETF business, even though Esposito itself had already disclosed that fact to the public before Burns left.

## ARGUMENT

To survive a FRCP 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; see also Puente

---

[13]      See FactorShares 2X:  Gold Bull/S&P Bear Form 8-K, which was filed with the SEC on June 5, 2012 and is publicly available on the SEC's website at the following address: http://www.sec.gov/Archives/edgar/data/1482879/000089109212003227/e48717_8k.htm (last visited Mar. 27, 2013) (hereinafter, "FactorShares Form 8-K"), APP 67-69.

[14]      See FactorShares Form 8-K, APP 67-69.

[15]      See FactorShares Form 424B3, APP 34-39.

[16]      See FactorShares Form 8-K, APP 67-69; FactorShares Form 424B3, APP 34-39.

[17]      See O. Ludwig, "New ETF Firm GENCAP Buys FactorShares," IndexUniverse (July 16, 2012), APP. 4-6; "GENCAP Ventures, LLC Purchases Factor Advisors, LLC," PR Newswire Dallas (July 17, 2012), APP 7; T. Lydon, "Gencap Acquires FactorShares ETFs," ETF Trends (July 18, 2012); APP 8-9; "GENCAP Ventures, LLC Announces Important Strategic Partnership With Esposito Global, LLC," PR Newswire Dallas (July 18, 2012), APP 10-11; R. Goldsborough, "Curtain Rises for 2 More Preferred-Stock ETFs," MorningStar (July 23, 2012), APP 12-18; see also "GENCAP Ventures, LLC Announces Important Strategic Partnership with Esposito Global, LLC – July 2012," at www.espositoglobal.com/securities/news.php?cmd=showitem&theid=88 (last visited Mar. 27, 2013), APP 23-24.

9

v. Citimortgage, Inc., No. 11-cv-2509, 2012 WL 4335997, at *2 (N.D. Tex. Aug. 29, 2012) (Godbey, J.); Fulmer v. Klein, No. 09-cv-2354, 2011 WL 1108661, at *2 (N.D. Tex. Mar. 16, 2011) (Godbey, J.).  In its Amended Complaint, Plaintiff has failed to present sufficient factual allegations to state any plausible claim for relief against ASI.  Moreover, in deciding this motion, the Court may also consider publically available documents.[18]

## I.        ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THEY FAIL TO SATISFY *TWOMBLY*, *IQBAL*, AND FRCP 8(A)(2)

Plaintiff's Amended Complaint, particularly in light of Plaintiff's Original Complaint, fails to demonstrate that Plaintiff's claims are plausible.  Plaintiff also fails to allege sufficient factual detail to support its claims, instead relying upon only formulaic recitations of the elements of its causes of action, speculative and naked assertions lacking any further factual enhancement, and legal conclusions.  Accordingly, Plaintiff's claims should be dismissed.

In Iqbal, the Supreme Court directed district courts to follow a two-step approach when evaluating a motion to dismiss pursuant to FRCP 12(b)(6):  (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) if "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."  Iqbal, 556 U.S. at 679; see also Puente, 2012 WL 4335997, at *2; Fulmer, 2011 WL 1108661, at *2.[19]

Plaintiff alleges that, sometime after Burns left Esposito on July 24, 2012, ASI began working with Burns in some capacity.  Am. Comp., ¶¶ 13-14.  ASI allegedly induced Burns to

---

[18]      See Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011); Puente, 2012 WL 4335997, at *3 (court may consider matters of public record); Fulmer v. Klein, 2011 WL 1108661, at *3 (court may consider SEC filings); Internet Corporativo S.A. de C.V. v. Bus. Software Alliance, Inc., No. 04–cv-2322, 2004 WL 3331843, at *3 (S.D. Tex. Nov. 15, 2004) (court may consider newspaper articles).

[19]      The Court is obviously very familiar with the Twomlby/Iqbal standard so ASI will not belabor the point here.  For a more fulsome discussion of that standard, see Dkt. No. 8, pp. 7-8.

breach his confidentiality agreement with Esposito and allegedly solicited from Burns the allegedly non-public fact that Esposito intended to enter the ETF business through GENCAP and FactorShares.  Id.  Beginning in mid-August of 2012, ASI allegedly shared this fact with Esposito's clients and allegedly "instructed" Esposito's clients to cease trading with Esposito. Id., ¶¶ 14-19.  Plaintiff also alleges that ASI "directed" Esposito's clients to another broker-dealer.  Id., ¶ 19.  Plaintiff alleges that it has been damaged by the loss of "clients, ETF trade transactions, and all commissions derived therefrom."  Id., ¶ 25.

### A.   All Of Plaintiff's Claims Are Implausible

All of Plaintiff's claims fail to satisfy the Twombly/Iqbal standard because they do not "plausibly give rise to an entitlement of relief."  Iqbal, 556 U.S. at 679.

First and foremost, the Amended Complaint fails to explain how, after July 24, 2012 when Burns left Esposito, ASI induced Burns to disclose to ASI the allegedly non-public fact that Esposito intended to enter the ETF business through GENCAP and FactorShares when that fact was already public knowledge in early June 2012 and Esposito itself had already publicly announced that intention no later than July 16, 2012.  See supra n.18.  This theory is at the heart of the entire Amended Complaint and each of Plaintiff's claims, and, as shown above, is implausible.  For this reason alone, the Amended Complaint should be dismissed in its entirety.

Comparing the Original Complaint to the Amended Complaint demonstrates the implausibility of Esposito's claims.  See APP 70-97.  For example, ASI allegedly induced Burns to breach his confidentiality agreement with Esposito prior to August 2012, over two months before Esposito filed its Original Complaint on October 23, 2012.  The Original Complaint, however, makes no mention of Burns, GENCAP, FactorShares, or Esposito's intention to enter the ETF business.  These glaring omissions from the Original Complaint demonstrate that

Esposito's current claims in the Amended Complaint are implausible.[20]

Moreover, the Amended Complaint fails to explain how or why ASI induced Burns to breach his alleged confidentiality agreement with Esposito, particularly given that Burns joined J.P. Morgan and, according to the Amended Complaint, ASI allegedly directed Esposito's clients to Knight Securities, not J.P. Morgan.  Am. Comp., ¶¶ 16, 19 & 29.

The Amended Complaint also fails to explain how Burns' breach of his own confidentiality agreement with Esposito could cause Esposito to lose current or prospective clients.[21]  Similarly, the Amended Complaint also fails to explain how the alleged disclosure of Esposito's own "Confidential Information" to Esposito's own clients could cause Esposito to lose those clients.

Finally, in both of its tortious interference claims (Counts 1 and 2), Plaintiff essentially alleges that ASI's conduct was the sole and proximate cause of Plaintiff allegedly losing clients. However, based upon the allegations that are actually contained in the Amended Complaint, it is implausible that the loss of any of Plaintiff's clients was solely and proximately caused by ASI's

---

[20]    See, e.g., Atain Specialty Ins. Co. v. Chang, No. 12-cv-160, 2012 WL 2194116, at *4 n.1 (S.D. Tex. June 14, 2012) (comparing allegations in original petition with those contained in the fourth amended petition makes allegations "entirely implausible"); see also Johnson v. Wells Fargo Bank, N.A., No. 11-cv-1254, 2012 WL 6015551, at *4 (D. Minn. Dec. 3, 2012) ("Johnson now seeks to pursue an entirely new claim against Wells Fargo – one that conflicts with the allegations made in his original complaint . . . the new claim that Johnson seeks to pursue is utterly implausible"); Green v. Niles, No. 11-cv-1349, 2012 WL 987473, at *5 (S.D.N.Y. Mar. 23, 2012) (because plaintiff's new claim was "utterly irreconcilable" with its earlier complaints, that "claim is patently implausible, and is dismissed on this basis"); In re Lerner, No. 10-52128, 2011 WL 1832811, at *3 (Bankr. D. Conn. May 12, 2011) ("A comparison of the two complaints" demonstrates implausibility).

Moreover, "the court need not accept as true allegations that conflict with a plaintiff's prior allegations." Dozier v. Deutsche Bank Trust Co. Ams., No. 09-cv-9865, 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss ... [and] directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true."); see also Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C., No. 10-cv-261, 2011 WL 1655575, at *7 n.12 (E.D.N.Y. May 2, 2011) (declining to accept as true plaintiff's new allegations which conflicted with those in three previous versions of plaintiff's complaint) (citations omitted).

[21]    See, e.g., Am. Comp., ¶ 25 ("as a proximate result of [ASI's] inducement of Burns to violate his confidentiality agreement, [ASI's] actions have caused Esposito to lose numerous clients and ETF trade transactions.").

alleged conduct.  Plaintiff has not alleged that any existing contract it had with a current client provided for an exclusive trading relationship between Esposito and the relevant client.  Plaintiff also has not alleged (nor could it) that any prospective, but as of yet non-existent, contract with any prospective client would provide for an exclusive trading relationship between Esposito and the prospective client.  Without the establishment of an exclusive trading relationship between Plaintiff and its clients, Plaintiff's clients would be free to trade securities with any broker-dealer of their choosing.  It is therefore impossible for Plaintiff to allege that, for any particular trade or group of trades, a client did or would choose to do business with another broker-dealer merely because of ASI's alleged conduct, as opposed to a myriad of other legitimate reasons why a client may choose not to trade with Esposito in favor of another broker-dealer for any particular trade or group of trades.

### B.   Plaintiff's Naked Assertions And Legal Conclusions Fail To Satisfy Its Burden To Allege Actual Facts

Plaintiff's allegations also fail to satisfy the <u>Twombly</u>/<u>Iqbal</u> standard because they are nothing more than naked assertions lacking further factual enhancement, or mere legal conclusions that may be disregarded on a motion to dismiss.  Plaintiff fails to allege sufficient actual facts to support the assertions it does make.  Moreover, the Amended Complaint is wholly lacking in other facts that are necessary to state a claim.

Indeed, Plaintiff fails to allege any <u>facts</u> as to:  the nature of ASI's alleged relationship with Burns; how and why ASI purportedly induced Burns to breach his contract with Esposito; the identity of any of Plaintiff's prospective clients that Plaintiff allegedly "lost;" exactly what the non-public information or "Confidential Information" was that was shared with Plaintiff's clients, which clients it was shared with, and what it was that made that information confidential; exactly which Esposito clients were "directed" to do business with another broker-dealer, and

how it was that <u>ASI</u> was able to direct <u>Esposito's</u> clients to do business with another broker-dealer; and which clients had potential contracts with Esposito, what were the general terms and conditions of those potential contracts, and how ASI interfered with those contracts.  Without such facts, Plaintiff's allegations fail to satisfy the applicable pleading standards under <u>Twombly</u> and <u>Iqbal</u>, and each of its claims should therefore be dismissed.

Moreover, for each of its three claims, Plaintiff repeatedly relies upon the naked legal conclusion, without further factual enhancement, that ASI's alleged conduct has caused Plaintiff to suffer damages.  <u>See</u>, <u>e.g.</u>, Am. Comp., ¶ 25 ("AdvisorShares actions have caused Esposito to lose numerous clients and ETF trade transactions, and all commissions derived therefrom."); ¶ 30 ("The independently tortious conduct of AdvisorShares . . . proximately caused Esposito to suffer actual damage or loss in the form of lost commissions on trades it reasonably would have completed for its clients."); ¶ 34 ("As a result of this breach of the NDA,  Esposito has suffered damages in the form of lost client relationships and lost income from trade commissions . . . .").  Plaintiff's damages allegations are mere legal conclusions, which are not entitled to an assumption of truth.  <u>Iqbal</u>, 556 U.S. at 678.

## II.     PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE A CLAIM FOR TORTIOUS <u>INTERFERENCE WITH EXISTING CONTRACT (COUNT 1)</u>

The tortious interference with existing contract claim alleges that, sometime after Burns left Esposito on July 24, 2012, ASI induced Burns to breach his confidentiality agreement with Esposito by allegedly soliciting from Burns the allegedly non-public fact that Esposito intended to enter the ETF business through GENCAP and FactorShares.  Am. Comp., ¶¶ 14-19.  Beginning in mid-August of 2012, allegedly using this allegedly non-public information provided by Burns, ASI allegedly "instructed" only two of Esposito's current clients (YourSource and American Wealth) to cease trading with Esposito, and directed one of those

14

clients to trade with Knight Securities.  Id.

Plaintiff has failed to allege sufficient facts to support a claim for tortious interference with an existing contract.  Under Texas law, to plead a cause of action for tortious interference with an existing contract, a plaintiff must allege facts showing:  (1) the existence of a contract subject to interference; (2) that the defendant willfully and intentionally interfered with that contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss.  ThermoTek, Inc. v. WMI Enters., LLC, No. 10-cv-2618, 2011 WL 1485421, at *8 (N.D. Tex. Apr. 19, 2011); Staton Holdings, Inc. v. Russell Athletic, Inc., No. 09-cv-0419, 2009 WL 4016117, at *4 (N.D. Tex. Nov. 20, 2009).[22]  This claim fails for several independent reasons.

First, this claim is implausible because it is premised on an allegation that, after July 24, 2012, ASI induced Burns to breach his confidentiality agreement with Esposito in order to learn the allegedly non-public fact that Esposito intended to enter the ETF business through GENCAP and FactorShares.  Am. Comp., ¶¶ 13-14.  However, no later than July 16, 2012, Esposito itself had already publicly announced its intention to enter the ETF business through GENCAP and FactorShares, with a strategy that mimicked ASI's business model.[23]  Esposito even flaunted this on its own website.[24]

Second, Plaintiff does not provide facts to support the allegation that ASI willfully and intentionally interfered with the alleged contract between Plaintiff and Burns.  To establish the element of willful and intentional interference with an existing contract, a plaintiff "must

---

[22]   ASI does not concede that Texas law applies to each and every one of Plaintiff's causes of action.

[23]   See articles and press releases, supra, fn.17.

[24]   See "GENCAP Ventures, LLC Announces Important Strategic Partnership With Esposito Global, LLC – July 2012," available at www.espositoglobal.com/securities/news.php?cmd=showitem&theid=88.

demonstrate that [the defendant] desired to cause the consequences of its act or that it believed

the consequences were substantially certain to result from it."  Staton, 2009 WL 4016117, at *5

n.3.  After conceding that "the precise nature of [ASI's and Burns'] relationship is not known,"

Plaintiff merely speculates that "Burns must have shared information" with ASI.  Am. Comp., ¶¶

22 & 28 (emphasis added).  Plaintiff similarly makes the naked assertion, lacking any further

factual enhancement, that ASI induced Burns to breach his confidentiality agreement "by

financial incentive or the promise of an ongoing broker relationship."  Am. Comp., ¶¶ 22 & 24.

Particularly given that Burns joined J.P. Morgan, not ASI, after leaving Esposito, and that ASI

allegedly directed Esposito's clients to Knight Securities, not J.P. Morgan, these speculative and

unsupported allegations are insufficient to support the element of willful and intentional

interference.  See Staton, 2009 WL 4016117, at *5 (a plaintiff must do more than "essentially re-

state the essential legal elements of this claim and then augment them with general factual

allegations" about a defendant's alleged intentional interference); Mill Creek Press, Inc. v.

Thomas Kinkade Co., No. 04-cv-1213, 2004 WL 2607987, at *10 (N.D. Tex. Nov. 16, 2004)

(conclusory allegations that defendant intentionally interfered with the alleged contract "will not

prevent a motion to dismiss").

    Third, Plaintiff does not plead facts to show how Burns' breach of his confidentiality

agreement with Esposito could proximately cause Esposito to lose clients.[25]  Rather, Plaintiff

merely posits the conclusion that "as a proximate result of Defendant's inducement of Burns to

violate his confidentiality agreement, AdvisorShare's [sic] actions have caused Esposito to lose

---

[25]     "The components of proximate cause are cause in fact and foreseeability.  These elements cannot be
established by mere conjecture, guess, or speculation."  See Axcess Broadcast Servs., Inc. v. Donnini Films, No. 04-
cv-2639, 2006 WL 2679982, at *4-5 (N.D. Tex. Sept. 18, 2006) (citation omitted).  Cause in fact is when the act or
omission was a "substantial factor" in bringing about the injury, and without it, the harm would not have occurred.
Video Ocean Grp. LLC v. Balaji Mgmt. Inc., No. 03-cv-1311, 2006 WL 964565, at *9 (S.D. Tex. April 12, 2006).

numerous clients and ETF trade transactions, and all commissions derived therefrom." Am. Comp., ¶ 25. This is insufficient. See ThermoTek, 2011 WL 1485421, at *8.

The Amended Complaint does not adequately explain how or why the alleged breach of Burns' confidentiality agreement was the proximate cause of Esposito losing clients. Nor does the Amended Complaint adequately explain how or why the disclosure of Esposito's intention to enter the ETF business would cause a client to stop using Esposito as a broker-dealer. The gravamen of this claim is that ASI allegedly convinced YourSource and American Wealth to stop trading with Esposito. See, e.g., Am. Comp., ¶¶ 16-17. Such alleged conduct had nothing to do with ASI's alleged inducement of Burns to breach his confidentiality agreement with Esposito, or ASI's disclosure of the information allegedly obtained from Burns which, as explained above, had already been made public. Finally, as explained above, without the establishment of an exclusive trading relationship between Esposito and its clients, Esposito's clients were free to trade securities with any broker-dealer of their choosing. It is therefore impossible for Esposito to allege, let alone prove, that, for any particular trade or group of trades, ASI's alleged conduct was the proximate cause of a client's choice to do business with another broker-dealer, as opposed to a myriad of other legitimate reasons why a client may choose not to trade with Esposito in favor of another broker-dealer for any particular trade or group of trades.

Thus, because Plaintiff has not identified a single purported client that Plaintiff lost solely as a proximate result of Burns allegedly breaching his confidentiality agreement, Plaintiff has failed to allege causation, and its claim must be dismissed. ThermoTek, 2011 WL 1485421, at *8 (plaintiff failed to plead whether defendant's customers "turned to another supplier as a result of Wilford's alleged interference with the relationships between ThermoTek and its customers").

For the reasons above, Plaintiff has failed to adequately allege a claim for tortious interference with an existing contract.

### III. PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS (COUNT 2)

The tortious interference with prospective contractual claim, like the tortious interference with existing contract claim, alleges that ASI solicited from Burns the allegedly non-public fact that Esposito intended to enter the ETF business through GENCAP and FactorShares. Am. Comp., ¶¶ 26-30. ASI allegedly used such information to "instruct" Esposito's prospective clients to cease trading with Esposito. Id., ¶ 28. ASI also allegedly used information that was designated as "Confidential Information" under the NDA to instruct Esposito's prospective clients to cease trading with Esposito. Id.

Plaintiff has failed to allege sufficient facts to support a claim for tortious interference with prospective contractual relations. Under Texas law, to plead a cause of action for tortious interference with prospective contractual relations, a plaintiff must allege facts showing that: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third person; (2) the defendant committed an independently tortious or unlawful act that prevented the contract from being formed; (3) the defendant's tort was committed with malice, i.e., a conscious desire to prevent formation of the contract; and (4) the plaintiff suffered actual damage or loss. ThermoTek, 2011 WL 1485421, at *8; Staton, 2009 WL 4016117, at *2. This claim fails for several independent reasons.

First, the only prospective clients identified by Plaintiff, YourSource and American Wealth, are the exact same clients identified as Plaintiff's existing clients. Compare Am. Comp., ¶¶ 16-17 with Am. Comp., ¶¶ 27-29. In other words, Plaintiff alleges that ASI tortiously interfered with Plaintiff's existing contracts with YourSource and American Wealth and, simultaneously, tortiously interfered with Plaintiff's prospective contracts with them. Plaintiff cannot have it both ways. As such, Plaintiff does not identify a single prospective client with

18

whom Plaintiff would have entered into a business relationship but for ASI's alleged

interference, and provides no facts to support its allegation of the probability of such <u>prospective</u>

relationship coming to fruition.  <u>ThermoTek</u>, 2011 WL 1485421, at *8 (general allegations of

interference did "not allow the court to infer that Wilford has interfered with any specific

prospective contract or client relationship, but merely recites an element of ThermoTek's

claim"); <u>Ceramic Performance Worldwide, LLC, v. Motor Works, LLC</u>, No. 09-cv-0344, 2010

WL 234804, at *3 (N.D. Tex. Jan. 21, 2010) (dismissing claim because plaintiff did not "identify

any prospective contracts or business relationships with third-parties that have been jeopardized

by the dissemination of false information by defendants").[26]

     <u>Second</u>, Plaintiff alleges no facts to demonstrate that ASI intentionally interfered with

any prospective relationships because the Amended Complaint provides no factual detail about

any prospective relationship between Plaintiff and any prospective client, and provides no factual

detail about what ASI allegedly did to interfere with any particular <u>prospective</u> relationship.

     <u>Third</u>, Plaintiff alleges no facts to demonstrate that ASI's alleged conduct was

independently tortious or unlawful.  Plaintiff's principal basis for alleging independently tortious

conduct is ASI's alleged violation of FINRA Rule 5250.  First, there is no private right of action

under FINRA rules.[27]  Second, as Plaintiff knows (or should know), ASI is not a FINRA

member.  Accordingly, ASI is not bound by the FINRA Rules.  <u>See</u>, <u>e.g.</u>, <u>Ayco Co., L.P. v.</u>

<u>Feldman</u>, No. 10-cv-1213, 2010 WL 4286154, at *10 (N.D.N.Y. Oct. 22, 2010) (FINRA rules

---

[26]    Plaintiff may not recover twice for the same injury.  <u>RSR Corp. v. Int'l Ins. Co.</u>, No. 00–cv-0250, 2009 WL 927527, at *11 (N.D. Tex. Mar. 23, 2009).

[27]    To the extent Plaintiff attempts to assert a private right of action based upon FINRA Rule 5250, or to somehow import FINRA Rule 5250 into its tortuous interference claims, Plaintiff's attempt must be rejected. There is no private right of action for a violation of a FINRA Rule.  <u>Richman v. Goldman Sachs Grp., Inc.</u>, 868 F. Supp. 2d 261, 275 (S.D.N.Y. 2012) (FINRA rules do not confer private rights of action); <u>Porter v. Shearson Lehman Bros. Inc.</u>, 802 F.Supp. 41, 62-63 (S.D. Tex. 1992) (same); <u>Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.</u>, No. 09-cv-00566, 2011 WL 2769838, at *4-5 (Tex. App. July 12, 2011) (same).

are only applicable to members).  Therefore, even <u>if</u> ASI violated FINRA Rule 5250, which it did not, such violation cannot constitute independently tortious or unlawful conduct sufficient to support this claim.  <u>See</u> <u>ThermoTek</u>, 2011 WL 1485421, at *8 ("Independently tortious" conduct is behavior "already recognized to be wrongful under the common law or by statute.").

 <u>Fourth</u>, Plaintiff does not allege that ASI acted with malice.  "Under Texas law, in the context of a claim for tortious interference with prospective business relationship, 'malice' is defined as the intentional doing of a wrongful act without just cause or excuse . . . ."  <u>Aurora Nat. Gas, L.L.C. v. Cont'l Nat. Gas, Inc.</u>, No. 98-cv-1348, 1999 WL 304561, at *14 (N.D. Tex. May 10, 1999).  The Amended Complaint does not contain a single allegation that ASI acted with a "malicious, intentional, or willful purpose" to prevent Plaintiff from forming a contract with a prospective client.  <u>Trammell Crow Residential Co. v. Am. Prot. Ins., Co.</u>, No. 10-cv-2163, 2012 WL 4364616, at *12 (N.D. Tex. Sept. 25, 2012) (malice necessary to support tortious interference with prospective business relations claim).

 <u>Fifth</u>, Plaintiff has failed to plead sufficient facts to show how ASI's alleged interference proximately caused any damages to Plaintiff.  <u>See</u> <u>Ceramic Performance</u>, 2010 WL 234804, at *3.  Plaintiff's claim fails on this element of this cause of action for the same reasons Plaintiff's claim for tortious interference with an existing contract fails on this same element, as explained above.  Additionally, Plaintiff's own allegations also doom this claim.  Plaintiff alleges that there "was a reasonable probability that Esposito would have entered into a business relationship with AdvisorShares ETF sub-advisors, including YourSource Financial and American Wealth Management, among other <u>Esposito clients</u>."  Am. Comp., ¶ 27 (emphasis added).  YourSource and American Wealth are alleged to be Esposito's <u>existing</u> clients.  Am. Comp. ¶¶ 16-17.  In the absence of identifying any particular <u>prospective</u> client relationship, if there was only a "probability" of the relationship in the first instance, it can hardly be said that ASI proximately

20

caused Esposito any actual damages if the relationship did not come to fruition.  And, by

Plaintiff's own admission, Plaintiff has not yet incurred actual damages, but merely "stands to

lose both future trading opportunities and the relationships with [its] clients."  Am. Comp., ¶ 30.

Thus, Plaintiff's allegations of damages are, at best, speculative, refer to existing (not

prospective) clients, and are insufficient to support a claim for tortious interference with

prospective contractual relations.  See Roehrs v. Conesys, Inc., 332 Fed. App'x. 184, 186-87 (5th

Cir. 2009) (tortious interference with prospective contractual relations must be based on

something more than speculative damages).  And, as with the tortious interference with existing

contract claim, any prospective client of Plaintiff would be free to trade securities with any other

broker-dealer of its choosing.  Thus, ASI could not have tortiously interfered with any of

Plaintiff's prospective contractual relationships.

     Finally, Plaintiff fails to allege that it suffered any damages because, as explained above,

the Amended Complaint fails to identify a single prospective client that Esposito actually "lost."

     For the reasons above, Plaintiff has failed to adequately allege a claim for tortious

interference with prospective contractual relations.

## IV.    PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE A CLAIM FOR BREACH OF CONTRACT (COUNT 3)

     Plaintiff's breach of contract claim alleges that Plaintiff and ASI entered into the NDA

and that ASI breached the NDA by disclosing "Confidential Information" covered by the NDA

to Plaintiff's clients.  Am. Comp., ¶¶ 18, 28, 34.  According to the Amended Complaint, the

"Confidential Information" subject to the NDA that was disclosed by ASI was not the same

information that Burns allegedly disclosed to ASI in violation of his own confidentiality

agreement with Esposito about the fact of Esposito's intent to enter the ETF business.  See Am.

Comp., ¶ 34.

Plaintiff has failed to allege sufficient facts to support a claim for breach of contract. Under Texas law, to plead a cause of action for breach of contract, a plaintiff must allege facts showing:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages resulting from the breach.  Lewis v. Bank of Am. NA, 343 F.3d 540, 544-45 (5th Cir. 2003).

First, the breach of contract claim is implausible and internally inconsistent.  By Esposito's own allegations, the "Confidential Information" disclosed by ASI to Esposito's clients was not the same information allegedly disclosed by Burns to ASI.  Am. Comp., ¶ 34.  If the information allegedly disclosed by Burns to ASI about Esposito's intention to enter the ETF business alone was used by ASI to instruct Esposito's clients not to trade with Esposito, then the "Confidential Information" disclosed by ASI could not have harmed Esposito's business.

Second, Plaintiff's Amended Complaint merely recites the elements of a breach of contract claim.  A pleading that offers a "formulaic recitation" of the elements of a breach of contract claim is not sufficient.  See, e.g., Roubinek v. Select Portfolio Serv. Inc., No. 11–cv–3481, 2012 WL 2358560, at *4 (N.D. Tex. June 21, 2012) (dismissing contract claim because, under Iqbal/Twombly, the allegations were too conclusory to state a claim); Pension Advisory Grp., Ltd. v. Country Life Ins. Co., 771 F. Supp. 2d 680, 700-01 (S.D. Tex. 2011) (same).

Third, Plaintiff fails to identify exactly what information that Plaintiff calls "Confidential Information" was allegedly disclosed by ASI to Plaintiff's clients.  See, e.g., Am. Comp., ¶ 34 ("AdvisorShares breached the NDA by disclosing Confidential Information subject thereto to clients of Esposito.").  All we know is what the "Confidential Information" disclosed by ASI was not – it was not the same information allegedly disclosed by Burns to ASI.  Am. Comp., ¶ 34. As a result, the allegations of the Amended Complaint do not provide a sufficient factual basis for this aspect of the claim, and thus do not establish a breach of the NDA by ASI, by merely

22

alleging that ASI disclosed "Confidential Information."  See Am. Realty Trust, Inc. v. Travelers

Cas. and Surety Co. of Am., 362 F. Supp. 2d 744, 753 (N.D. Tex. 2005) (dismissing claim

because complaint did "not give adequate notice as to the nature and scope of the breach of

contract claim") (Godbey, J.).[28]

 The lack of such information in the Amended Complaint is especially egregious in light

of the terms of the NDA, which specifically exclude a variety of information from the NDA's

definition of "Confidential Information."  Section 3 of the NDA specifically provides that:

> Confidential Information will not include information which:
> (i) is now, or hereafter becomes, through no act or failure to act on the part of the receiving party, generally known or available to the public;
> (ii) was acquired by the receiving party before receiving such information from the disclosing party and without restriction as to use or disclosure;
> (iii) is hereafter rightfully furnished to the receiving party by a third party, without restriction as to use or disclosure;
> (iv) is information which the receiving party can document was independently developed by the receiving party; [or]
> (v) is required to be disclosed pursuant to law, provided the receiving party uses reasonable efforts to give the disclosing party reasonable notice of such required disclosure;  . . .

Am. Comp., Exh. A (Dkt. No. 17-1), Section 3 (emphasis added).

 What little information the Amended Complaint does provide about this claim suggests

that the "Confidential Information" that Plaintiff complains about could fall into the exclusion in

Section 3(i) of the NDA, that is, information that is "generally known or available to the public."

Indeed, the Complaint merely describes the "Confidential Information" as information that "was

not available to the public and included information regarding assets, acquisitions, and business

operations of Esposito."  Am. Comp., ¶ 7 (emphasis added).  However, the Amended Complaint

fails to identify exactly what "Confidential Information" about Esposito's assets, acquisitions,

---

[28] Plaintiff could have alleged an exact description of the allegedly "Confidential Information" that ASI allegedly disclosed, without revealing that information to the public, if Plaintiff had filed a complaint under seal.

and business operations was allegedly disclosed by ASI, and neither ASI nor the Court should simply have to take Plaintiff's word for it that it was not already known or available to the public. Am. Comp., ¶ 7. Indeed, because Plaintiff is a broker-dealer registered with the SEC, Esposito is <u>required</u> to make annual public filings with the SEC about, among other things, its assets, acquisitions, and business operations.[29] In 2012, Plaintiff made such an SEC filing about its assets, acquisitions, and business operations. <u>See</u>, <u>e.g.</u>, Esposito Form X-17A-5, APP 40-63, pp. 2-5, 8-10 (disclosing information about income, cash flows and assets), & p. 6 (disclosing information about acquisitions and business operations); <u>see also</u> Dkt. No. 2, Exh. 10. Esposito itself also discloses such information on its website.[30]

Accordingly, it is possible that the alleged "Confidential Information" that was allegedly disclosed by ASI is <u>excluded</u> from the definition of "Confidential Information" by the very terms of the NDA itself. Given the lack of any factual detail about exactly what was disclosed, the Amended Complaint fails to adequately allege that ASI breached the NDA by disclosing a vague and undefined category of information that Plaintiff merely labels "Confidential Information."

<u>Fourth</u>, Plaintiff has completely failed to allege how it was damaged as result of ASI's alleged disclosure of Plaintiff's "Confidential Information" to Plaintiff's own clients. <u>See</u> <u>Broussard v. PNC Bank</u>, No. 11-cv-1874, 2012 WL 2994653, at *5 (S.D. Tex. July 20, 2012) (dismissing breach of contract claim because of conclusory allegations as to how the breach caused damages). Plaintiff has failed to adequately allege that it actually "lost" any clients as a result of ASI's disclosure of "Confidential Information" subject to the NDA as opposed to some alternative reason. Plaintiff also fails to explain how disclosure of Esposito's own "Confidential

---

[29]     <u>See</u> Section 17 of the Securities Exchange Act of 1934, 15 U.S.C. § 78q, and Rule 17a-5 promulgated thereunder, 17 C.F.R. § 240.17a-5 ("Rule 17"); <u>see also</u> Rule 17a-5(d)(1) .

[30]     <u>See</u> www.espositoglobal.com, including in the "Esposito News" section of the site (<u>see</u>, <u>e.g.</u>, "Gencap Ventures, LLC announces important strategic partnership with Esposito Global, LLC – July 2012").

Information" to its own clients could have caused Esposito to lose those clients.  Finally, based upon the current allegations of the Complaint, it is implausible that the disclosure of information "regarding assets, acquisitions, and business operations of Esposito" (Am. Comp., ¶ 7), which have no readily apparent connection with the trading abilities of Esposito, a broker-dealer, somehow caused Plaintiff's clients to trade securities elsewhere.

For the reasons above, Plaintiff has failed to allege a claim for breach of contract.

**V.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED *WITH PREJUDICE***

A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the "plaintiff has alleged his best case," Jones v. Greninger, 188 F.3d 322, 327 (5th Cir. 1999), or if any further amendment would be futile.  Taubenfeld v. Hotels.com, 385 F. Supp. 2d 587, 592 (N.D. Tex. 2004) (Godbey, J.).  Because Esposito has already amended its claims against ASI once, Esposito should not get a third try.

**CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.[31]

Dated:  March 28, 2013

Respectfully submitted,
By: */s/ Ann Marie Painter*
Ann Marie Painter
Texas Bar No. 00784715
annmarie.painter@morganlewis.com
Micala R. Bernardo
Texas Bar No. 24061108
mbernardo@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, Texas 75201
Telephone: (214) 466-4000
Facsimile:  (214) 466-4001
*ATTORNEYS FOR DEFENDANT*
*ADVISORSHARES INVESTMENTS, LLC*

---

[31]    Because the Amended Complaint is baseless, Plaintiff is not entitled to attorneys' fees.  Am. Comp., ¶ 35.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served upon all counsel of record via the Court's ECF filing on this 28th day of March, 2013, as follows:

> Court D. Smith
> Justin P. England
> Crouch & Ramey, LLP
> 2001 Ross Avenue, Suite 4400
> Dallas, TX  75012

*/s/ Ann Marie Painter*
Ann Marie Painter

26