IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ESPOSITO SECURITIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-4926-N |
| | § | |
| ADVISORSHARES INVESTMENTS, | § | |
| LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses Defendant AdvisorShares Investments, LLC's ("AdvisorShares") motion to dismiss Plaintiff Esposito Securities, LLC's ("Esposito") amended complaint [23]. The Court denies the motion.[1]

## I. THE PARTIES' DISPUTE OVER ADVISORSHARES'S ALLEGED DISCLOSURE OF CONFIDENTIAL INFORMATION[2]

Esposito is a securities broker-dealer, and AdvisorShares is a business that develops and distributes exchange-traded funds ("ETF"). This case centers on Esposito's claim that AdvisorShares shared confidential information with Esposito's clients. AdvisorShares received this information from two sources: Esposito itself and former Esposito employee Justin Burns.

---

[1]To the extent AdvisorShares is reurging its motion to dismiss Esposito's original petition [7], the Court denies the motion as moot because the original petition is no longer Esposito's live pleading.

[2]The Court takes the facts in this section from the amended petition.

In November 2010, Esposito was considering purchasing an interest in AdvisorShares in an effort to enter the ETF market.  Pursuant to the companies' negotiations, Esposito and AdvisorShares entered into a nondisclosure agreement.  Esposito alleges that it shared certain confidential information with AdvisorShares that was subject to that agreement.  According to Esposito, this information was not available to the general public.

Negotiations between the companies fell apart in mid-2012.  Still seeking to enter the ETF market, Esposito decided to partner with GENCAP Ventures, LLC ("GENCAP").  GENCAP, in turn, partnered with Factor Shares, a line of ETFs.  Esposito claims that, while it and AdvisorShares were still negotiating, Esposito disclosed its partnership with GENCAP to AdvisorShares but "did not disclose its proprietary strategy for how it intended to use its relationship with GENCAP."  Am. Compl. ¶ 10.

Esposito employee Justin Burns knew about the GENCAP strategy Esposito kept secret from AdvisorShares.  Burns had signed confidentiality and noncompete agreements with Esposito.  Burns resigned from Esposito on July 24, 2012 and allegedly shared secret information with AdvisorShares after he resigned.

The following month, AdvisorShares allegedly contacted some of Esposito's clients and shared Esposito's strategies with them.  Esposito asserts that AdvisorShares disclosed both (1) confidential information Esposito had earlier shared with AdvisorShares under the nondisclosure agreement, and (2) confidential information AdvisorShares learned from Burns. Each client AdvisorShares contacted was also a subadvisor for AdvisorShares's ETF. Accordingly, Esposito asserts, AdvisorShares had persuasive power over the Esposito clients.

AdvisorShares allegedly instructed Esposito's clients to cease working with Esposito because Esposito and AdvisorShares were now competitors. The clients did so.

Esposito subsequently filed this action in Texas state court. AdvisorShares removed the case to this Court and moved to dismiss Esposito's original petition. Esposito responded by filing an amended complaint asserting three causes of action against AdvisorShares: tortious interference with contract, tortious interference with prospective contractual relations, and breach of contract. AdvisorShares now moves to dismiss.

## II. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right

to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III. THE COURT DENIES ADVISORSHARES'S MOTION

#### A. *Esposito's Evidence from Outside the Complaint*

AdvisorShares argues that the information it allegedly shared with Esposito's clients was not confidential when the sharing is alleged to have taken place. To support this argument, AdvisorShares points to facts from three sources: (1) Esposito's website, (2) financial news reports, and (3) Esposito's filings with the Securities and Exchange Commission ("SEC"). Using these sources, AdvisorShares claims to demonstrate that the information AdvisorShares allegedly learned from Burns and shared with Esposito's clients was public knowledge before Burns left Esposito on July 24, 2012. The Court declines to reach that conclusion at this stage of the litigation.

#### 1. *The Court Declines to Consider the Website and News Reports.* – A court must

usually accept allegations in a complaint as correct, but it may look at certain other documents, including "matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand"). More generally speaking, "courts may . . . consider matters of which they may take judicial notice." *Lovelace v. Software*

*Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir.1996).  The Federal Rules of Evidence provides that a court may take judicial notice of an "adjudicative fact" if the fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned."  FED. R. EVID. 201(b); *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998)

In this case, the Court declines to consider the website or news reports.  First, they are not matters of public record.  *See, e.g.*, FED. R. EVID. 803(8) (defining "public record" as "a record or statement of a *public office*" under certain conditions (emphasis added)).  Second, the Court cannot determine to its satisfaction that the accuracy of these sources is beyond question.  AdvisorShares asks the Court to stray too far from the pleadings at this stage of the case.  If AdvisorShares wishes the Court to consider these documents, it must properly put them before the Court in a motion for summary judgment.

*2. The SEC Filings Do Not Prove That Esposito's Claim Is Insufficient.* – The Fifth Circuit has ruled that in securities fraud cases a court may consider relevant public disclosure documents that are (1) required to be filed with the SEC, and (2) actually filed with the SEC. *Lovelace*, 78 F.3d at 1018.  "Such documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents."  *Id.*  The Court applies the same rule here because, as in a typical securities fraud case, an important issue is what Esposito disclosed to the public.  The filings, however, are not sufficient to convince the Court to dismiss the complaint.  It is true that one June 2012

filing states that "GENCAP Ventures, LLC currently is indirectly wholly-owned and controlled by Esposito Private Equity Group." Def.'s' App. Supp. Mot. Dismiss [20], Ex. 20, at 2. It also states that GENCAP acquired Factor Shares. *Id.* However, Esposito also accuses AdvisorShares of using proprietary information regarding Esposito's strategy for GENCAP and Factor Shares. Am. Compl. ¶¶ 10, 15. The SEC filings do not address any of these strategic considerations. The documents AdvisorShares has provided do not, in short, demonstrate that the Court should dismiss Esposito's claims.[3]

### B. Tortious Interference with Contractual Relations

To state a claim for tortious interference with contract, a plaintiff must allege four elements: (1) a contract subject to interference, (2) an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damages, and (4) actual

---

[3]AdvisorShares also asks the Court to compare Esposito's original and amended complaints and to find the claims in the amended complaint implausible on account of various omissions in the original complaint and differences between the documents. The Court determines that this would not be appropriate. The amended complaint is the live pleading, and it is this complaint – and this complaint only – that must meet the requirements of Rule 12(b)(6). AdvisorShares cites several unpublished district and bankruptcy court decisions from around the country in which courts have looked, for one reason or another, to a plaintiff's original complaint when deciding a motion having to do with an amended complaint. In most of these cases, the amended complaint *directly* contradicts the original. In such cases, some courts have found that they need not accept contradictory facts in the amended complaint. *E.g.*, *Green v. Niles*, No. 11 Civ. 1349 (PAE), 2012 WL 987473, at *3 (S.D.N.Y. Mar. 23, 2012) ("[T]he court need not accept as true allegations that conflict with a plaintiff's prior allegations."). But there are no direct contradictions here – the amended complaint alleges different facts and claims than the original, but that is the nature of an amended complaint. Thus, assuming *arguendo* that looking to an original complaint is ever appropriate in deciding a motion to dismiss, the Court determines that it is not appropriate here.

damage or loss occurred.  *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993).

Esposito has alleged the existence of a contract: its confidentiality agreement with Burns.

It has pled that AdvisorShares willfully and intentionally interfered with that contract by

inducing Burns to reveal confidential information.[4]  It has alleged that AdvisorShares's

actions proximately caused its damage, the loss of the client accounts, because

AdvisorShares shared the confidential information with those clients.  This is sufficient to

state a claim for relief.[5]

### C.  *Tortious Interference with Prospective Contractual Relations*

A plaintiff must allege four elements to state a claim for tortious interference with

prospective contractual relations: (1) a reasonable probability that the parties would have

entered into a business relationship; (2) an intentional, malicious intervention or an

independently tortious or unlawful act performed by the defendant with a conscious desire

---

[4]AdvisorShares claims that Esposito has not sufficiently pled that AdvisorShares acted willfully.  In a tortious interference case, "a plaintiff is not required to prove intent to injure, but rather 'only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.'"  *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 490 (5th Cir. 2008) (quoting *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992)).  If, as alleged, AdvisorShares had persuasive power over Esposito's clients and induced them to leave Esposito for a different broker-dealer by sharing information improperly obtained from Burns, there can be little doubt that the consequences of AdvisorShares's acts – the clients' abandonment of Esposito – were substantially certain.

[5]AdvisorShares also argues that Esposito has insufficiently pled proximate cause. There is, however, a direct causal chain between AdvisorShares's alleged acquisition of the confidential information from Burns, its use of the confidential information in inducing clients to find a different broker-dealer, and the harm caused by the clients' departures.

to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; (3) a lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference, i.e., the defendant's actions prevented the relationship from occurring. *See Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 590 (Tex. App. – Austin 2007, pet. denied) (citing *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001)).

Esposito's complaint sufficiently alleges the elements of a claim.  It asserts that there was a reasonable probability Esposito would enter into relationships with AdvisorShares's ETF subadvisors, including by making further contracts with YourSource Financial and American Wealth Management, which were already Esposito clients.  It alleges that AdvisorShares shared information gleaned from Burns and acquired under the nondisclosure agreement with those potential business partners.  Moreover, the complaint suggests that AdvisorShares's conduct was independently tortious: it asserts that AdvisorShares tortiously interfered with Esposito's existing contracts and Burns's confidentiality agreement. *See L.G. Motorsports, Inc. v. NGMCO, Inc.*, No. 4:11-CV-112, 2012 WL 718603, at *9 (E.D. Tex. Mar. 6, 2012) (finding allegation of tortious interference with contract sufficient to meet "independently tortious or wrongful" requirement of claim), *report and recommendation adopted*, 2012 WL 1080924 (E.D. Tex. Mar. 30, 2012).[6]  The complaint adequately asserts

---

[6]AdvisorShares asserts that Esposito insufficiently pled this claim because it did not allege that AdvisorShares acted with malice.  But the second element allows a plaintiff to plead an independent tort rather than malice, as Esposito has done here.

ORDER – PAGE 8

that AdvisorShares had no privilege or justification for its actions, and it contends that AdvisorShares's actions resulted in actual damages in the form of loss of commissions on trades it would have completed in prospective contracts with the lost clients.[7]  In short, Esposito has sufficiently stated a claim for tortious interference with prospective contractual relations.

### D.  Breach of Contract

Finally, Esposito alleges that AdvisorShares breached the parties' nondisclosure agreement by revealing certain confidential information to Esposito's clients.  To state a claim for breach of contract, Esposito must plead (1) the existence of a valid contract; (2) that it performed or tendered performance; (3) that AdvisorShares breached the contract; and (4) that Esposito suffered damages as a result of that breach.  *See Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 404 (5th Cir. 2010) (citing *Hussong v. Schwan's Sales Enterp., Inc.*, 896 S.W.2d 320, 326 (Tex. App. – Houston [1st Dist.] 1995, no writ)).

---

[7]AdvisorShares argues that the alleged damages are speculative and thus insufficient. It cites *Roehrs v. Conesys, Inc*. in support of this argument.  332 F. App'x 184, 186–87 (5th Cir. 2009).  But *Roehrs* is both unpublished (and therefore not precedential) and inapposite. It deals with the level of proof necessary to prove damages on summary judgment, not the sufficiency of a pleading.  Esposito's assertion of damages is sufficient to survive a motion to dismiss.

Esposito's allegations, though thin, are sufficient to survive AdvisorShares's motion.[8] Esposito pleads that the parties had a nondisclosure agreement and that Esposito abided by that contract. It asserts that AdvisorShares shared confidential information shared under the nondisclosure agreement – including information about Esposito's operations and management – with Esposito's clients.[9] It specifies that this information is different from the information AdvisorShares allegedly shared that it had learned from Burns. And it claims injury based on the breach in the form of lost client relationships and lost income from trade commissions. It has thus set out enough facts to state a plausible claim for breach of contract.

## CONCLUSION

AdvisorShares asks the Court to require more detailed facts from Esposito as to all of its claims, but the facts Esposito has already pled are sufficient to give rise to plausible claims under *Twombly* and *Iqbal*. The Court therefore declines to dismiss them.

---

[8]As AdvisorShares notes, a "formulaic recitation" of the elements of a cause of action is insufficient. *See Iqbal*, 566 U.S. at 678; *see also, e.g.*, *Roubinek v. Select Portfolio Servicing Inc.*, No. 3:11-CV-3481-D, 2012 WL 2358560, at *4 (N.D. Tex. June 21, 2012) (dismissing claim where plaintiff "has not pleaded . . . any supporting facts). The facts discussed in the accompanying paragraph, however, demonstrate that the complaint provides more than a "formulaic recitation."

[9]AdvisorShares would have Esposito identify in the complaint "*exactly* what information . . . was allegedly disclosed." Def.'s Br. Supp. Mot. Dismiss [24], at 22 (emphasis added). But this is asking too much of a complaint. Again, all Esposito must do is plead enough facts to give rise to a plausible claim. It does not need to have assembled a summary judgment record at this point.

Signed July 25, 2013.

_____
David C. Godbey
United States District Judge